IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 13-CR-10055 |
| | ) | |
| BRIAN BROADFIELD, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AND OPINION

This matter is now before the Court on Defendant Broadfield's Motions for Compassionate Release (D. 287, 294) and the Government's Response (D. 295). For the reasons set forth below, Defendant's Motions are DENIED.

## BACKGROUND

On October 28, 2014, Defendant pled guilty to conspiracy to knowingly manufacture more than 50 grams of a mixture and substance containing methamphetamine. At the time of sentencing, he qualified as a career offender and had a total offense level of thirty-four and a criminal history category VI. The sentencing guideline range was 262-327 months of imprisonment. On March 11, 2016, Defendant was sentenced to 208 months in prison and eight years of supervised release. The sentence was later reduced to 156 months pursuant to Rule 35. (D. 219). Defendant is currently an inmate at Federal Correctional Institution ("FCI") Seagoville, and his projected release date is November 18, 2024. (D. 292).

On June 22, 2020, Defendant filed an initial Motion for Compassionate Release. (D. 255). On August 26, 2020, appointed counsel filed an Amended Motion for Compassionate Release on Defendant's behalf contending his asthma and other breathing issues put him at risk should he

contract COVID-19. (D. 264). On September 24, 2020, this Court denied his Motions. (D. 275). Defendant appealed, and the Seventh Circuit affirmed. (D. 286).

On September 28, 2021, Defendant filed his Second Motion for Compassionate Release. (D. 287). On October 12, 2021, appointed counsel filed an Amended Motion for Compassionate Release on his behalf. (D. 294). On October 13, 2021, the Government filed its response in opposition. (D. 295). Defendant filed a traverse to the Government's response on October 25, 2021. (D. 298). This Order follows.

## LEGAL STANDARD

Before filing a motion for compassionate release, a defendant is required to first request that the Bureau of Prisons (BOP) file a motion on his or her behalf. 18 U.S.C. § 3582(c)(1)(A). A court may grant a motion only if it was filed "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after thirty days have passed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id*.

The compassionate release statute directs the Court to make three considerations: (1) whether extraordinary and compelling reasons warrant a sentence reduction; (2) whether a reduction is consistent with the factors listed in 18 U.S.C. § 3553(a); and (3) whether a reduction would be "consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1). The Seventh Circuit provided further instruction regarding the proper analysis when evaluating a motion for a discretionary sentencing reduction under § 3582(c)(1)(A) based on "extraordinary and compelling" reasons, which includes two steps. *United States v. Thacker*, 4 F.4th 569, 576 (7th Cir. 2021).

> At step one, the prisoner must identify an "extraordinary and compelling" reason warranting a sentence reduction…. Upon a finding that the prisoner has supplied

> such a reason, the second step of the analysis requires the district court, in exercising the discretion conferred by the compassionate release statute, to consider any applicable sentencing factors in § 3553(a) as part of determining what sentencing reduction to award the prisoner.

*Id.* The Seventh Circuit has also held that "because the Guidelines Manual lacks an applicable policy statement, the trailing paragraph of § 3582(c)(1)(A) does not curtail a district judge's discretion. *United States v. Gunn,* 980 F.3d 1178, 1180 (7th Cir. 2020). This Court is therefore not bound by the Sentencing Commission's analysis in § 1B1.13 or the application notes regarding the definition of "extraordinary and compelling reasons." *Id*. at 1181.

## DISCUSSION

The Court finds the exhaustion requirements have been met and will now address this matter on the merits. Defendant is a 45-year-old male who seeks compassionate release due to medical conditions that increase his risk for severe illness if he contracts COVID-19. (D. 294).  In support, Defendant argues his cardiac issues and underlying health conditions, the lack of follow-up with his medical directives from the cardiologist, and his inability to receive the COVID-19 vaccine until he could consult an allergist regarding its risks qualify as extraordinary and compelling reasons for his immediate release. *Id.*

Before addressing Defendant's arguments regarding his underlying health conditions and access to medical care, this Court must first address Defendant's access and ability to receive the COVID-19 vaccine. The Seventh Circuit has made clear that "prisoners who have access to the vaccine cannot use the risk of COVID-19 to obtain compassionate release." *United States v. Ugbah,* 4 F.4th 595, 597 (7th Cir. 2021) (citing *United States v. Broadfield,* 5 F.4th 801, 803 (7th Cir. 2021 (a prisoner who remains at elevated risk because he has declined to be vaccinated cannot plausibly characterize that risk as an "extraordinary and compelling" justification for release.")).

The Seventh Circuit specifically addressed Defendant's concerns regarding the vaccine in his last appeal, stating:

> … Broadfield informed us that he was offered a vaccine but declined. He maintains that he fears an allergic reaction, but he does not contend that he has suffered such a reaction to any other vaccine. The Bureau of Prisons' policy statement provides that prisoners with a history of allergic reactions to vaccines will receive extra evaluation before vaccination and additional observation afterward, but Broadfield does not come within this category. He says that he has had an allergic reaction to two drugs (penicillin V and bupropion) and contends that this experience may show that he is allergic to polyethylene glycol, a component of both mRNA vaccines, or polysorbate, a component of the Johnson & Johnson vaccine. But he does not contend that other people who have allergies to penicillin or bupropion have fared poorly after being vaccinated. None of the FDA, the CDC, or the WHO treats an allergy to penicillin or bupropion as a reason not to receive any of the COVID-19 vaccines. Instead they recommend (and the Bureau of Prisons provides) a 15-to-30-minute observation period after the injection so that allergic reactions may be detected and treated. The federal judiciary need not accept a prisoner's self-diagnosed skepticism about the COVID-19 vaccines as an adequate explanation for remaining unvaccinated, when the responsible agencies all deem vaccination safe and effective.

*Broadfield,* 5 F.4th at 803.

In his Amended Motion, Defendant highlights his ongoing cardiac and respiratory issues and argues the "lack of access to appropriate medical care" puts him at increased risk if he were to contract COVID-19. (D. 294). Defendant still has not received the COVID-19 vaccine due to his ongoing concern of an allergic reaction and argues he has been unable to make an informed decision about the risks of the vaccine due to his "lack of access to medical care" to discuss those concerns. Defendant's medical records show he was referred to an allergist-immunologist on August 2, 2021 and is scheduled for a consultation on December 31, 2021. (D. 297-6).

While Defendant is currently waiting for his consultation, it does not change this outcome. As with his prior Motion for Compassionate Release, Defendant has still failed to show that: (1) he has suffered any severe adverse allergic reactions to other vaccines; (2) persons with the same allergies have fared poorly after being vaccinated; and (3) the FDA, the CDC, or the WHO treats

4

an allergy to penicillin or bupropion as a reason not to receive any of the COVID-19 vaccines. Furthermore, Defendant's medical records show that his allergic reactions to medications to Penicillin V and Wellbutrin (bupropion) was a rash. (D. 297-5). Defendant's medical records also show he is allergic to Albuterol Sulfate HFA, which caused swelling and itching, and Naproxen which caused Angioedema. *Id.*

While Defendant claims his underlying medical conditions put him at severe risk of illness if he were to contract COVID-19, he has failed to produce any evidence showing he would be at greater risk if he were to receive the vaccine prior to consulting an allergist. While prisoners may turn to the compassionate release statute if they show they are unable to receive or benefit from the vaccine, there is no evidence that the Defendant is a part of this select group. As a result, the Defendant's risks are "self-incurred," and it is "impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release." *See Broadfield,* 5 F.4th at 803.

No other "extraordinary or compelling" reasons warranting a sentence reduction, other than grounds relating to the COVID-19 pandemic, have been provided. As a result, this Court does not have discretionary authority under § 3582(c)(1)(A) to reduce Defendant's sentence. *See Thacker,* 4 F.4th at 576. Therefore, the Court need not consider the sentencing factors under § 3553(a).

## CONCLUSION

For the reasons set forth above, Defendant's Second Motion for Compassionate Release [287] and Amended Motion for Compassionate Release [294] are DENIED. Entered: November 29, 2021.

s/ Michael M. Mihm
Michael M. Mihm
United States District Judge
